UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | |
|---|---|
| **PERRY RAYMOND LEFLER** | **CIVIL ACTION NO. 2:10-cv-1887** |
| | **SECTION P** |
| **VERSUS** | |
| | **JUDGE MINALDI** |
| **ALLEN CORRECTIONAL CENTER, ET AL** | **MAGISTRATE KAY** |

## REPORT AND RECOMMENDATION

*Pro se* plaintiff Perry Raymond Lefler, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on January 18, 2011. Doc. 1. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections. He is incarcerated at Forcht Wade Correctional Center (FWCC), Keithville, Louisian; however, at the time of filing, petitioner was incarcerated at Allen Correctional Center (ACC), Kinder, Louisiana and complains of events that occurred at that facility. Doc. 1.

As defendants, plaintiff names ACC[1], Global Expertise in Outsourcing Group, Inc. (GEO)[2], and the Louisiana Department of Safety and Corrections (LDOC).[3]

---

[1] Allen Correctional Center is not a proper party to this suit. Fed.R.Civ.P. 17(b) provides that the "capacity to sue or be sued shall be determined by the law of the state in which the district court is held." Thus, Louisiana law governs whether ACC has the capacity to be sued in this action. Under Louisiana law, to possess such a capacity, an entity must qualify as a "juridical person." This term is defined by the Louisiana Civil Code as "... an entity to which the law attributes personality, such as a corporation or partnership." La. Civ. Code Ann. art. 24. In Louisiana, correctional centers are not legal entities capable of suing or being sued. *Ruggiero v. Litchfield*, 700 F.Supp. 863, 865 (M.D. La. 1988). In other words, the State of Louisiana has not granted juridical status to ACC. Plaintiff's suit against this non-juridical entity fails to state a claim upon which relief can be granted.

[2] In addition, plaintiff has not stated a sustainable claim against GEO. It is clear that GEO is named in its supervisory capacity. It is well settled that supervisory officials may not be held liable under § 1983 under the doctrine of *respondeat superior*. See *Mouille v. City of Live Oak*, 977 F.2d 924 (5th Cir. 1992), *cert. denied*, 508

1

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE.**

*Background*

While at ACC, plaintiff states that he was a participant in the Faith Based Program (FBP). Doc. 1, p. 5. During a community meeting on March 12, 2010, FBP coordinator, Theresa Blocker, stopped plaintiff from sharing information about his pagan beliefs with the group. *Id*. Blocker addressed plaintiff in front of the other inmates and said that she would not allow him to force his beliefs on others. *Id*. Plaintiff was embarrassed and claimed that such was not his intention. *Id*.

On March 13, 2010, plaintiff and another inmate were in route to a meeting when tier representative Robin LeBlanc stopped them and told the other inmate that plaintiff's practice of Wicca was devil worship. Doc. 1, p. 6. That same evening, inmate Rowdy Vincent asked plaintiff if he was a devil worshiper. *Id*. Several other FBP participants then confirmed that there was a rumor on the tier that plaintiff was a devil worshiper, a white supremacist, and a

---

U.S. 951 (1993); *Jennings v. Joshua Indep. Sch. Dist.*, 877 F.2d 313 (5th Cir. 1989), *cert. denied*, 496 U.S. 935 (1990). To be liable under § 1983, a supervisory official must be personally involved in the act causing the alleged constitutional deprivation, or must have implemented a policy so deficient that the policy itself acts as a deprivation of constitutional rights. *Cronn v. Buffington*, 150 F.3d 538, 544 (5th Cir.1998). Plaintiff has named GEO as a defendant but has not alleged personal involvement or that it implemented a policy so deficient that the policy itself acts as a deprivation of constitutional rights.

[3] Likewise, plaintiff's claims against the Louisiana Department of Corrections are not viable as the Eleventh Amendment bars his suit against this entity. More specifically, the Eleventh Amendment bars lawsuits against a state agency if the agency is so closely connected to the state that the state itself is the party in interest. *See Vogt v. Board of Comm'rs of the Orleans Levee District,* 294 F.3d 684 (5th Cir. 2002). Further, the Fifth Circuit has previously analyzed the Department of Public Safety and Correction's status as protected by the Eleventh Amendment from lawsuits brought in federal court. *See Champagne v. Jefferson Parish Sheriff's Office,* 188 F.3d 312 (5th Cir. 1999). Thus, plaintiff's action against the Louisiana Department of Corrections is barred, and should be dismissed with prejudice.

member of the Aryan Brotherhood. Doc. 1, p. 7. Plaintiff explains to the court, in detail, the specifics of his religion, including that he is a white separatist not a supremacist. *Id*.

On March 16, 2010, plaintiff states that he was called by Ms. Blocker for a private meeting wherein they discussed his religion. Doc. 1, p. 8. He alleges that Blocker told him that he had three days to, in essence, deny his religion or she would remove him from the FBP as she would no longer allow him to infect the minds of the other inmates with his evil darkness. Doc. 1, p. 9. Plaintiff informed Blocker that he would was dedicated to his faith and would not deny it. *Id*. Later that evening several black inmates accused plaintiff of being a devil worshiper, a white supremacist, and a member of the Aryan Brotherhood. Doc. 1, p. 10. The inmates made racial comments and told him that if he did not leave ACC that he would be beaten, raped, and murdered. Doc. 1, p. 11.

Plaintiff immediately went to Lt. Mayberry, who in turn contacted Captain Baker. *Id*. Plaintiff submitted an ARP against Theresa Blocker for discriminating against him based on his religious preference. *Id*. Cpt. Baker moved plaintiff into a cell without another inmate pending an investigation of the matter. *Id*. Plaintiff states that he was interviewed by Chaplain March, Warden Allemand, and Cpts. Garnett, Langley, and Wharton. *Id*. He contends that during the meetings, he was called a liar, accused of being involved in gang activity, and told negative things about his religion. Doc. 1, p. 12.

Plaintiff claims that while in the new cell, he continued to receive threats from black inmates. Doc. 1, p. 12. On March 30, 2010, he filed a request for protection and transfer which was denied on April 20, 2010, as the investigation showed no reason for black inmates to attack him. Doc. 1, p. 13. On the same day, plaintiff was served with a disciplinary write up for being involved in secret prohibited behavior, namely, belonging to a gang. *Id*. On April 26, 2010, the

disciplinary board found him guilty of the charges and sentenced him to a loss of 180 days of good time credit as well as a custody change from medium to maximum. Doc. 1, p. 14. Plaintiff appealed the decision and also sent a letter of explanation to Warden Terrell, ACC, GEO, and the LDOC. *Id*. His appeals to all of the above were denied. *Id*.

On July 16, 2010, Lt. Reed made a work call in plaintiff's tier. Doc. 1, p. 15. Plaintiff, fearing for his safety, did not report. *Id*. He was later written up for and found guilty of not reporting. *Id.* The appeal of the decision was denied as plaintiff did not have an enemy list on file. Doc. 1, p. 16. On July 16, 2010, plaintiff was again threatened by black inmates. Doc. 1, p. 15. The next day, plaintiff walked out of his cell and laid on the floor stating that he refused to live on that tier as his life was in danger. *Id*. He was placed in a cell alone until a safe cell became available. *Id.*

Plaintiff claims that the defendants are guilty of retaliating against him for filing a grievance against FBP coordinator Blocker, that evidence was falsified in order to convict him of the rule violations, and that ACC lied to cover up the injustice done to him. Doc. 1, p. 16. As relief for the above, plaintiff seeks injunctive relief and compensatory damages. Doc. 1, p. 17.

*Law and Analysis*

1. *Initial Review*

When a prisoner sues an officer or employee of a governmental entity pursuant to 42 U.S.C. § 1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C. § 1915(e)(2); *see also Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990). A claim is frivolous if it lacks an arguable basis in law or in fact, *Booker v. Koonce*, 2 F.3d 114, 115 (5th

Cir.1993); *see,Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986). District courts must construe *in forma pauperis* complaints liberally, but, they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff has provided a description of the theories which he claims entitles him to relief and he has recited facts supporting those theories. Based upon plaintiff's pleadings, the court is convinced that plaintiff has presented the best case which could be presented by him under the circumstances, and that further amendment of the pleadings would serve no useful purpose.

Accepting all of plaintiff's allegations as true, and giving plaintiff the benefit of every doubt, the court concludes, for the reasons stated hereinafter, that he has failed to state a claim

for relief, that his claims are frivolous as a matter of law, and that his complaint should therefore be dismissed with prejudice.

### 2. *Practice of Religion*

Plaintiff claims that his right to practice his faith was curtailed by defendants actions described above.

Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion. Nevertheless, lawful incarceration, by its very nature, brings about the necessary withdrawal or limitation of many privileges and rights. The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).

The standard for evaluating an inmate's claim that a prison regulation or practice improperly restricts his right to the free exercise of his religion requires the court to evaluate the regulation or practice in order to determine whether it "is reasonably related to legitimate penological interests." *Id.* at 349. The "reasonableness" of a regulation or practice is evaluated based upon the following inquiry:

(1) Is there a valid, rational connection between the prison practice and the legitimate governmental interest put forward by prison officials to justify the practice;

(2) Are there alternative means of exercising the right that remain open to prison inmates, that is, are inmates allowed other means to express their religious beliefs on a general level;

(3) What impact will accommodation of the asserted constitutional right have on guards and other inmates and on the allocation of prison resources generally; and

(4) Are alternatives to the prison practice available that would accommodate the inmates' rights at a *de minimis* cost to valid penological interests?

*Turner v. Safley*, 482 U.S. 78 (1987); *Green v. Polunsky*, 229 F.3d 486, 489-90 (5th Cir. 2000). Each factor need not be considered and the factors need not be evaluated evenly. *Scott v. Mississippi Dep't of Corr.*, 961 F.2d 77, 80 (5th Cir.1992).

With regard to the first prong of the *Turner* test, plaintiff has not alleged that prison officials have prohibited him from practicing his religion. In fact, plaintiff states that he refused to deny his religion. The fact that he was told, on one occasion, not to speak at an FBP meeting in no way means that he was prohibited from practicing his religion.

The second and forth prongs of the *Turner* test address whether or not "alternative means" of practicing his religion have been made available to the plaintiff. In analyzing the availability to inmates of "alternative means" of exercising their religion, however, "[t]he pertinent question is not whether the inmates have been denied specific religious accommodations, but whether, more broadly, the prison affords the inmates opportunities to exercise their faith." *Freeman v. Texas Dep't of Criminal Justice*, 369 F.3d 854, 861 (5th Cir.2004); *Adkins v. Kaspar*, 393 F.3d 559, 564 (5th Cir. 2004).

As previously stated plaintiff was not denied the right to practice his religion. At most it is possible that he was not able to practice his religion the way that he wanted on occasion. In *O'Lone v. Estate of Shabazz, supra*., the inmate-plaintiffs complained that they were not allowed to attend the weekly Muslim congregational service held on Friday evenings because of their assignments to work details outside the main prison grounds. *O'Lone v. Estate of Shabazz*, 482 U.S. at 345-46. The Supreme Court considered the evidence supplied by the prison administration regarding security needs, rehabilitative needs, and the impact of alternative accommodations and this evidence was evaluated in the light of those rights actually retained by

the inmates to practice their religion. The Court then noted that the plaintiff- inmates were not deprived of all forms of religious exercise. Based upon these facts, the Supreme Court held that the "ability on the part of [the inmates] to participate in other religious observances of their faith supports the conclusion that the restrictions at issue here were reasonable." *Id.* at 352.

Plaintiff's claim that his rights to practice his religion were curtailed by defendants is without merit.

To the extent that plaintiff implies that his Equal Protection rights were violated under the Fourteenth Amendment with respect to his ability to practice his religion in a manner similar to that permitted by other religious groups with members incarcerated at ACC, such a claim likewise lacks merit. This is so because, "[t]o succeed on his equal protection claim, [plaintiff] must prove purposeful discrimination resulting in a discriminatory effect among persons similarly situated." *Muhammad v. Lynaugh*, 966 F.2d 901, 903 (5th Cir. 1992) ( citing *McCleskey v. Kemp*, 481 U.S. 279 (1987)).

The Fourteenth Amendment requires that all persons similarly situated shall be treated alike, but it does not demand "that every religious sect or group within a prison – however few in numbers – must have identical facilities or personnel." *Cruz v. Beto*, 405 U.S. 319, 322 n. 2 (1972). Again, prison administrators are obliged only to provide inmates with "reasonable opportunities ... to exercise the religious freedoms guaranteed by the First and Fourteenth Amendments." *Id.* at 322. Like the plaintiffs in *O'Lone v. Estate of Shabazz*, this plaintiff has not, nor can he show that he has been deprived of all means of religious expression.

In short, plaintiff has failed to demonstrate that his First Amendment free-exercise right has been violated. *See Mumin v. Phelps*, 857 F.2d 1055, 1056 (5th Cir.1988) (holding that even a prison regulation which prohibited Muslim inmates from attending Friday services was not

unconstitutionally restrictive because it satisfied all four "reasonableness" considerations). "[T]he loss of [plaintiff's] absolute freedom of religious expression is but one sacrifice required by [his] incarceration..." *Scott v. Mississippi Dep't of Corr.*, 961 F.2d at 82; *see also Abdur-Rahman v. Michigan Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir.1995) ("Reasonable time, place, or manner restrictions upon ... religious gatherings do not necessitate the identification of a compelling state interest.")

Accordingly, the undersigned concludes that plaintiff's First Amendment free exercise of religion claim is frivolous.[4]

### 3. *Retaliation*

Plaintiff implies that he was the victim of retaliation because of his use of the grievance system.

It is well established that prison officials may not retaliate against an inmate because that inmate exercised a right guaranteed to him under the constitution. *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995), *cert. denied*, 516 U.S. 1084 (1996). However, as the Fifth Circuit has repeatedly emphasized, claims of retaliation from prison inmates must be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in penal institutions. *Woods v. Smith*, 60 F.3d at 1166.

To state a claim of retaliation a prisoner must allege facts which establish that (1) he

---

[4] In the alternative, the court notes that plaintiff's claims herein would nevertheless be barred by the physical injury requirement of § 1997e(e), which states that no federal civil action may be brought by a prisoner confined to a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury. *See Geiger v. Jowers,* 404 F.3d 371 (5th Cir. 2005), which held that § 1997e(e) applied to a prisoner's First Amendment claims. More specifically, *Geiger* stated that Section 1997e(e) applies to all federal civil actions in which a prisoner alleges a constitutional violation, making compensatory damages for mental or emotional injuries non-recoverable, absent physical injury. Thus, as in *Geiger*, plaintiff's failure to allege physical injury falls squarely under § 1997e(e)'s bar, precluding his recovery of compensatory damages for emotional or mental injuries allegedly suffered as a result of the purported First Amendment violation.

exercised a specific constitutional right, (2) the defendant had the intent to retaliate against him for his exercise of that right, (3) a retaliatory adverse act occurred, and (4) causation. Causation requires a showing that "but for the retaliatory motive the complained of incident ... would not have occurred." *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (quoting *Woods*, 60 F.3d at 1166), *cert. denied*, 522 U.S. 995 (1997)); *McDonald v. Steward*, 132 F.3d 225 (5th Cir. 1998). "The inmate must allege more than his personal belief that he is the victim of retaliation." *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999). "The inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred." *Id.* (quoting *Woods v. Smith,* 60 F.3d 1161, 1166 (5th Cir.1995), *cert. denied sub nom Palermo v. Woods*, 516 U.S. 1084 (1996)).

Plaintiff claims that the issuance of disciplinary violations were acts of retaliation against him; however, he fails to offer anything more than conclusory allegations in support of this claim. As previously stated, conclusory allegations of retaliatory motive or intent are not sufficient to evidence a pattern of retaliation or motive for same.

In the present case, plaintiff's allegations of retaliation are insufficient to state a claim under this cause of action. For this reason, plaintiff's claim for retaliation should be dismissed.

*4. Disciplinary Proceedings*

To the extent that plaintiff complains that he was wrongfully charged, convicted, and punished for disciplinary violations, his claim must fail.

According to plaintiff, he was sanctioned with the loss of good time credits and with loss of some of his privileges. He has not specifically requested reinstatement of the good time

---

In the present case, the very nature of plaintiff's claims fall with the scope of emotional injury.

credits that were forfeited as a result of his prison disciplinary conviction.[5] However, he implied that he was entitled to money damages as a result of the alleged retaliation against him, namely, the filing of false disciplinary reports.

A claim for damages arising from the loss of good time credits is not cognizable until a prisoner can show that the challenged disciplinary action has been reversed on direct appeal, expunged by executive order, declared invalid by an authorized tribunal, or called into question by a federal court's issuance of a writ of *habeas corpus*. *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (When a prisoner seeks damages in a civil rights suit, the district court must consider whether judgment in favor of prisoner would necessarily imply the invalidity of his conviction or sentence; if so, the complaint must be dismissed unless prisoner can demonstrate that conviction or sentence has already been invalidated). The Supreme Court extended *Heck* to prison disciplinary cases in *Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (A "conviction" for purposes of the *Heck* analysis includes a ruling in a prison disciplinary proceeding that results in a change in the prisoner's sentence, including loss of "good time" credits.) A prisoner's civil rights "claim for declaratory relief and money damages, based on allegations of deceit and bias on the part of the decision maker that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983." *Id.* Under the facts alleged by plaintiff, a judgment in his favor in this civil rights lawsuit would necessarily call into question the validity of the disciplinary hearing and the ultimate loss of good time credits.

Since plaintiff has not shown that his disciplinary conviction has been reversed,

---

[5] Of course, plaintiff may not challenge his loss of good time credits in a civil rights action. *See Clarke v. Stalder*, 154 F.3d 186, 189 (5th Cir.1998) (*en banc*). The restoration of forfeited good time credits must be pursued in a *habeas corpus* action filed pursuant to 28 U.S.C. §2241. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). A *habeas corpus* action must be filed in the district court where the prisoner is in custody, and, the proper respondent

expunged, declared invalid, or called into question, his claims for money damages must be dismissed with prejudice as frivolous. *Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir. 1996).

### 5. *Injunctive Relief*

As previously stated, plaintiff has been transferred from ACC. Therefore, his requests for injunctive relief are moot.

The law is clear that the transfer of a prisoner out of an allegedly offending institution generally renders his claims for injunctive relief moot. *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (*per curiam*) (plaintiff's individual suit challenging parole procedures mooted by release absent "demonstrated probability" that he would again be subject to parole board's jurisdiction); *Cooper v. Sheriff, Lubbock County, Tex.*, 929 F.2d 1078, 1081 (5th Cir.1991) (*per curiam*) (holding that prisoner transferred out of offending institution could not state a claim for injunctive relief). In order for plaintiff's claims to remain viable, he would have to establish that the possibility of returning to ACC would make his claims capable of repetition yet evading review. *See Hardwick v. Brinson*, 523 F.2d 798, 800 (5th Cir. 1975). Plaintiff must show either a "demonstrated probability" or a "reasonable expectation" that he would again be incarcerated at CPP. *Murphy v. Hunt*, 455 U.S. 478, 482 (1982). At its most lenient, the standard is not "mathematically precise" and requires that plaintiff show a "reasonable likelihood" of repetition. *Honig v. Doe*, 484 U.S. 305, 318-19 (1988).

Even under the most permissive interpretation, plaintiff's complaint does not, and cannot, meet that standard. Simply put, plaintiff has been released from the custody of ACC and his requests for injunctive relief are moot. *See Herman v. Holiday*, 238 F.3d 660 (5th Cir. 2001) (even if plaintiff had established an Eighth Amendment violation, his transfer from the offending

---

in such action is the person exercising custody over the prisoner. See 28 U.S.C. §§ 2241(d) and 2243.

institution rendered his claims for declaratory and injunctive relief moot) (citing *Cooper v. Sheriff, Lubbock County, Tex.,* 929 F.2d 1078, 1084 (5th Cir. 1991)); *Bailey v. Southerland*, 821 F.2d 277, 279 (5th Cir. 1987)).

*Conclusion*

Therefore, **IT IS RECOMMENDED THAT** plaintiff's civil rights complaint asserting the unlawfulness of his prison disciplinary conviction and the sanctions imposed be **DISMISSED WITH PREJUDICE** (**TO BEING ASSERTED AGAIN ONCE THE** *HECK* **CONDITIONS ARE MET**) as frivolous in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B); and,

**IT IS FURTHER RECOMMENDED THAT** plaintiff's civil rights complaint alleging a violation of his right to practice his religion and his claims alleging retaliation be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim upon which relief can be granted in accordance with 28 U.S.C. § 1915A(b)(1).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See*

*Douglas v. United Serv. Auto. Ass'n,* **79 F.3d 1415 (5th Cir. 1996).**

  THUS DONE this 18th day of July, 2011.

        _____
          KATHLEEN KAY
       UNITED STATES MAGISTRATE JUDGE